**Randy ABERCROMBIE,
Plaintiff–Appellant,**

v.

**CITY OF CATOOSA, OKLAHOMA; May-
or Curtis Conley; and Police Chief
Benny Dirck, Defendants–Appellees.**

No. 86–1392.

United States Court of Appeals,
Tenth Circuit.

Feb. 16, 1990.

Rehearing Denied March 22, 1990.

Earl W. Wolfe, Tulsa, Okl., for plaintiff-appellant.

Walter D. Haskins (Joseph A. Sharp and John H.T. Sheridan, of Best, Sharp, Thomas, Glass & Atkinson, with him on the brief), Tulsa, Okl., for defendants-appellees.

Before BALDOCK, McWILLIAMS, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Plaintiff, Randy Abercrombie, brought suit in the United States District Court for the Northern District of Oklahoma against the City of Catoosa, Mayor Curtis Conley, and Police Chief Benny Dirck, alleging two counts: (1) a conspiracy in violation of 42 U.S.C. § 1985(2) and 42 U.S.C. § 1986 arising out of alleged intimidation and retaliation against him because of his testimony in an unrelated case in federal court; and (2) a claim under 42 U.S.C. § 1983 for deprivation of a property interest without due process of law and for interference with plaintiff's first amendment rights arising from the removal of plaintiff from the wrecker rotation logs used to make wrecker referrals by the City of Catoosa police dispatchers. Plaintiff appeals from the district court's grant of summary judgment for the City and Mayor Conley on both counts of plaintiff's complaint and for the police chief Dirck on Count I, and from the district court's grant of judgment notwithstanding the verdict in favor of Dirck.

The facts leading to this appeal are as follows. Plaintiff was the owner of a wrecker business in Catoosa, Oklahoma. The police chief of Catoosa, defendant Benny Dirck, was in charge of determining which wreckers in the city would receive the police department's wrecker referrals made for third parties. From November 1981 until March 1982, plaintiff received all the wrecker referrals from the police.

In his complaint, plaintiff alleges that when he appeared to testify in federal

court in February 1982 as a witness in a suit against the City of Catoosa, Mayor Conley told him that he "had better stay away from [plaintiff's attorney] Wolfe." He also alleges that subsequently he was approached by police chief Dirck, who asked him, "How is business?" When plaintiff replied that his business was "[d]oing real well," Dirck allegedly stated, "You do know I can control your business?" After testifying in that case, plaintiff no longer was given all the wrecker referrals from the police. Instead, the referrals were rotated between plaintiff and another wrecker.[1]

Subsequently, plaintiff campaigned on behalf of a mayoral candidate who challenged the incumbent Mayor Conley. After his candidate lost the election, plaintiff was removed from the wrecker rotation log used by the police dispatchers and therefore no longer received any wrecker referrals from the police.

Plaintiff brought suit in the district court against the City of Catoosa, Mayor Curtis Conley, and Police Chief Benny Dirck. The district court granted all defendants summary judgment on plaintiff's first count of conspiracy in violation of 42 U.S.C. §§ 1985(2) and 1986. That court also granted defendants Conley and the City of Catoosa summary judgment on plaintiff's second count under 28 U.S.C. § 1983 for deprivation of a property interest and first amendment retaliation. Thus, the only issue that survived summary judgment was the Section 1983 claim against Dirck. On that claim, a jury found for plaintiff, awarding him $7,500 on his property deprivation claim, $125,000 on his first amendment claim, and $50,000 in punitive damages. After the jury reached its verdict, the district court granted Dirck judgment notwithstanding the verdict.

## I.

### CONSPIRACY UNDER SECTIONS 1985(2) AND 1986

We review the summary judgment orders *de novo*, applying the same legal stan-

dard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir.1988). However, the nonmoving party may not rest upon his pleadings; the party must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ The district court held, and we agree, that plaintiff has not established the existence of a conspiracy, which is a prerequisite to a claim under Sections 1985(2) and 1986. Section 1985(2) specifically requires the existence of "two or more persons" who "conspire." Section 1986, which provides an action for neglecting to prevent a violation of Section 1985, is premised upon the existence of a valid Section 1985 claim. *Wright v. No Skiter, Inc.*, 774 F.2d 422, 424 (10th Cir.1985).

In support of his conspiracy claim, plaintiff alleged that when he went to federal court to testify in an unrelated case, he was approached by Mayor Conley, who told him that he had "better stay away from [plaintiff's attorney] Wolfe." He also alleges that he subsequently was approached by Dirck, who told him, "You do know I can control your business?"

■■ Those allegations are insufficient to establish a conspiracy. A civil conspiracy requires the combination of two or more persons acting in concert. *Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985). Plaintiff has not

---

**1.** During the times relevant to this case, there were only two qualified wreckers in or near the City of Catoosa, including plaintiff's wrecking business.

established, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants. Plaintiff merely has alleged two isolated statements, one by Conley and one by Dirck. Without any evidence of communication between Dirck and Conley, there is nothing to give rise to the inference that they conspired. *See Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). Thus, the district court was correct in concluding that there is no genuine issue of material fact concerning the existence of a conspiracy. Accordingly, it was proper to dismiss the first count of plaintiff's complaint on summary judgment.[2]

## II.

### PLAINTIFF'S SECTION 1983 CLAIM

■ The second count of plaintiff's complaint alleged that the defendants violated Section 1983 by depriving plaintiff of a property right without due process of law and by retaliating against him for the exercise of his first amendment rights. The district court dismissed plaintiff's Section 1983 claim against the City and the mayor on summary judgment. That court found that there were no allegations linking the mayor to the decision to remove plaintiff from the wrecker rotation logs and that the decision by Dirck was not a sufficient custom or policy to make the City liable. Although plaintiff lists the liability of the City and the mayor as an issue on appeal, he failed to argue this issue in his appellate brief or at oral argument. Therefore, we conclude that plaintiff has waived this issue. *See Jordan v. Bowen*, 808 F.2d 733, 736 (10th Cir.), *cert. denied*, 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 247 (1987); *Bledsoe v. Garcia*, 742 F.2d 1237, 1244 (10th Cir.1984); Fed.R.App.P. 28(a)(4).

■ On appeal, plaintiff has focused instead on the grant of judgment notwith-

standing the verdict in favor of Dirck. Upon review of a judgment n.o.v., we must consider the evidence in the light most favorable to the party opposing the motion. *Zimmerman v. First Federal Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988). A judgment n.o.v. "may not be granted unless the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made." *Miller v. City of Mission, Kan.*, 705 F.2d 368, 373 (10th Cir.1983) (quoting *Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir.1974)).

### A. *Due Process/Property Interest*

Plaintiff's first Section 1983 claim is that he was deprived of a property interest without due process of law. Specifically, he claims that pursuant to Oklahoma's wrecker statute he has a property interest in continued wrecker referrals that Dirck denied him without due process. After careful examination of Oklahoma's wrecker statute, we agree.

In order for someone to have a property interest in a benefit, he "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Richardson v. City of Albuquerque*, 857 F.2d 727, 731 (10th Cir.1988); *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Property interests "arise from sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Dickeson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir.1988). In this case, the existence of a property right is an issue of state law. *See Conaway*, 853 F.2d at 793; *Dickeson*, 844 F.2d at 1438 n. 5. Thus, we must examine Oklahoma's wrecker statute and decide whether it creates a property right.

---

2. Although raised below, it appears that plaintiff has abandoned a claim under Section 1985(3). The district court found, and we agree, that plaintiff has not shown some racial or otherwise class-based animus, as required by that section.

*See United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 834–835, 103 S.Ct. 3352, 3359–3360, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

The starting point of our analysis is Okla.Stat. tit. 47, § 955, which provides in pertinent part:

> Each officer of the Department [of Public Safety] shall carry a list of the holders of current Class A wrecker operator licenses in the district of the officer, and shall use the services of the Class A licensed wrecker operator whose location is nearest to the vehicle to be removed in all instances specified under subsections (1), (2), (3) and (4) of this section. The requests for services may be alternated among all such licensed wrecker operators who are located within a reasonable radius of each other.... *In cities of less than fifty thousand (50,000) population, all such licensed wrecker operators located near or in the city limits of such cities shall be considered as being equal distance and shall be called on an equal basis as nearly as possible.* (Emphasis added.)

It is not disputed that the population of Catoosa was less than 50,000 at the times relevant to this case and that plaintiff was a Class A licensed wrecker operator.

Plaintiff contends that the City of Catoosa was bound by the requirements in Section 955. He relies chiefly on Okla.Stat. tit. 47, § 952(D), which at the relevant time provided:

> Wrecker or towing services provided by an operator at the request of a political subdivision of this state shall be provided in accordance with the provisions and regulations adopted pursuant thereto applied to wrecker or towing services contained in Section 955 of this title, unless otherwise regulated by the governing body of the political subdivision.

Plaintiff argues, and we agree, that because the City of Catoosa, which indisputably is a political subdivision, did not "otherwise regulate[]" wrecker referrals, it was bound to follow Section 955 when making such referrals.

Defendant responds, and the district court held, that Section 952(D) merely requires the *Department of Public Safety* to follow the requirements in Section 955 when a political subdivision makes a request *to the Department of Public Safety* for wrecking services. We disagree with this statutory interpretation for a number of reasons.[3] First, the clear language of Section 952(D) appears to apply to any wrecker services provided "at the request of a political subdivision." There is nothing in the language of Section 952(D) that would limit it only to requests made by a political subdivision *to* the Department of Public Safety and exclude requests made by a political subdivision directly to the operator of the wrecker services. We should not write into a statute a limiting clause that was not put there by the legislature. Second, we have not seen any evidence or citations to the record indicating that political subdivisions ever request wrecker referrals from the Department of Public Safety. Third, the district court's interpretation of Section 952(D) appears to make that section superfluous because Section 955 by its language would bind the Department of Public Safety when it made wrecker referrals regardless of whether or not it was made at the request of a political subdivision. Fourth, the last clause in Section 952(D) states that the requirements in Section 955 apply "unless otherwise regulated by the governing body of the political subdivision." If the district court was correct that Section 952(D) applies only to the Department of Public Safety, that clause would produce the strange result that political subdivisions could dictate the procedures that the state Department of Public Safety is bound to follow. For these reasons, we conclude that Section 952(D) did require the City of Catoosa to make wrecker referrals on an equal basis as nearly as possible and thus created a property interest in wrecker referrals in favor of the plaintiff.

---

**3.** We recognize that some deference generally is accorded district court judges when they are interpreting the law of the state in which they sit. Although we do not question that "local judge rule" here, we do note that the amount of deference in a case of pure statutory construction, as here, may be less than in a case involving interpretation of state case law.

## B. *First Amendment*

Plaintiff's next Section 1983 claim is that Dirck retaliated against him for the exercise of his first amendment rights. Specifically, he alleges that he no longer was given referrals because of his support for a mayoral candidate. We find that the district court's grant of judgment notwithstanding the verdict on this claim was improper.

■ The district court dismissed the entire Section 1983 claim because it found that plaintiff did not have a property right in continued wrecker referrals. But, as noted above, plaintiff *did* have a property right in equal referrals. Furthermore, the Supreme Court has held a property right is not required for a first amendment retaliation claim. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *See also Dickeson,* 844 F.2d at 1440. In *Perry,* the Supreme Court stated that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." 408 U.S. at 597, 92 S.Ct. at 2697. *See also Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); L. Tribe, *American Constitutional Law,* § 11-5 at 781 (2d ed. 1988).

Accordingly, we AFFIRM the district court's grant of summary judgment against all defendants on plaintiff's first count and against defendants Mayor Conley and the City of Catoosa on plaintiff's second count. We REVERSE the district court's grant of judgment notwithstanding the verdict on plaintiff's Section 1983 claim against defendant Dirck and we REMAND for reinstatement of the jury verdict.